IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| DDROPS COMPANY, REINHOLD VIETH, AND ELAINE VIETH,<br><br>    Plaintiffs,<br><br>v.<br><br>WALGREEN CO., AND DRUGSTORE.COM, INC.,<br><br>    Defendants. | Civil Action No. 15-CV-3981<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs DDrops Company ("DD Co."), Reinhold Vieth, and Elaine Vieth (collectively "the Vieths") (collectively, "the Plaintiffs"), for their Complaint against Defendants Walgreen Co. ("Walgreens") and drugstore.com, Inc. ("drugstore.com") (collectively, "the Defendants"), allege and state as follows:

**JURISDICTION AND VENUE**

1. This is an action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, as hereinafter more fully appears. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400 in that this Court has general and special personal jurisdiction over each of Walgreens and drugstore.com, each of which reside in this judicial district, and each of which has committed acts of infringement in this judicial district, as hereinafter more fully appears.

## PARTIES

3. DD Co. is a partnership registered under the laws of Ontario, Canada, with its principal offices located in Woodbridge, Ontario, Canada.

4. The Vieths are individuals who are citizens of Canada and reside in Toronto, Canada.

5. Upon information and belief, Walgreens is a corporation organized under the laws of the state of Illinois.

6. Upon information and belief, Walgreens is the largest drug retailing chain in the United States. Upon information and belief, as of May 31, 2014, Walgreen operated 8,217 stores in all 50 states, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands.

7. Upon information and belief, Walgreens has been registered to conduct business in the state of Minnesota, and has conducted business in the state of Minnesota, since at least 1926. Upon information and belief, Walgreens registered office in Minnesota is located in Roseville, Minnesota. Upon information and belief, Walgreens owns and operates in excess of ninety (90) "Walgreens" stores located throughout the state of Minnesota. Upon information and belief, Walgreens sells, *inter alia*, vitamins and vitamin supplements at its stores, including those located in the state of Minnesota.

8. Upon information and belief, drugstore.com is a corporation organized under the laws of the state of Washington. Upon information and belief, Walgreens acquired drugstore.com in March 2011, and drugstore.com now is a wholly-owned subsidiary of Walgreens. Upon information and belief, drugstore.com sells, *inter alia*, vitamins and vitamin supplements online to consumers, including residents of the state of Minnesota.

# FACTS

9. The Vieths are inventors and owners of certain inventions relating to vitamin D compositions and methods of administering such compositions to human beings (the "Inventions").

10. The Vieths have received numerous patents world-wide on the Inventions, including, but not limited to, Canadian Patent No. 2,578,881 (the "Canadian Patent"), entitled "Vitamin D Compositions and Method of Administration to a Human Being," which issued on November 4, 2008.

11. On June 30, 2015, the United States Patent and Trademark Office (USPTO) duly and validly issued U.S. Patent No. 9,066,958 ("the '958 Patent"), entitled "Vitamin D Compositions and Method of Administration to a Human Being," to the Vieths. The Vieths are the owners of the '958 Patent. A true and correct copy of the '958 Patent is attached as Exhibit A.

12. As of January 1, 2007, the Vieths granted an exclusive, world-wide license under all patents or patent applications relating to the Inventions, to The DDrops Company, Inc., a Canadian corporation ("D Drops"), including the right to enforce the patent against infringers and to collect damages ("the License"). The '958 Patent is included within the scope of the License.

13. As of July 24, 2008, D Drops, with the consent of the Vieths, transferred and assigned its rights and obligations under the License to DD Co.

14. DD Co. pays an annual license fee and royalty to the Vieths on all sales of products covered by any of the patents included within the scope of the License, including the '958 Patent.

15. Since November 4, 2008, the Plaintiffs have successfully enforced the Canadian Patent against various infringers in Canada. As a result, the various defendants in such actions have ceased or have agreed to cease sales of their infringing products in Canada.

16. DD Co. sells vitamin D supplements, including vitamin D supplements for infants the method of use of which is covered by one or more claims of the '958 Patent in the United States, including in the state of Minnesota (the "Patented Product"). DD Co. sells the Patent Product under the registered U.S. trademark "Baby Ddrops®". DD Co. has sold the Patented Product in Minnesota since at least June 2011.

17. True and correct copies of photographs of the packaging for the Patented Product and the Patented Product bottle are attached as Exhibit B.

18. Since sales of the Patented Product began in the United States, DD Co. has marked the product packaging with the words "patent pending."

19. Since issuance of the '958 Patent, DD Co. has begun marking the product packaging with the notice, "U.S. Patent 9066958." DD Co. has shipped the Patented Product with the '958 Patent number into the United States.

20. The packaging for the Patented Product features a distinctive blue shading.

21. The packaging and bottle label for the Patented Product states that its ingredients are cholecalciferol, which is Vitamin D3, and fractionated coconut oil, which is a medium chain triglyceride.

22. The packaging and bottle label for the Patented Products states: "Babies need vitamin D for healthy growth and development."

23. The packaging and bottle label for the Patented Product instructs the purchaser/end user:

> **Directions**: Infants less than 1 year old: Place 1 drop daily onto mother's nipple or on a clean surface, such as a washed finger or a pacifier, and allow baby to suck for at least 30 seconds. Or mix one drop daily with milk, juice or other food.

24. The packaging and bottle label for the Patented Product states: "Serving Size: 1 drop (0.028mL or 0.001 fl. oz.)".

25. The packaging for the Patented Product states: "Vitamin D is important for healthy growth and development in infancy and childhood especially for normal bone growth and muscle strength."

26. The packaging for the Patented Product states: "The American Academy of Pediatrics recommends that infants who are breast-fed or partially breast-fed should be supplemented with 400 IU of vitamin D daily."

27. The Patented Product provides 400 IU of vitamin D3 per drop.

28. The Patented Product has been the subject of several clinical studies, which confirmed its efficacy in providing vitamin D to infants. The results of these studies have been published in peer-reviewed journals, including in *Pediatrics* and the *Journal of Nutrition*.

29. The Patented Product has received several prestigious awards, including a Mom's Choice Gold Award and a Parent tested – Parent approved™ award.

30. Sale of the Patented Products to parents and caregivers of infants provides an important introduction for long-term sales of vitamin supplements for older children and adults. DD Co. also sells vitamin D supplements for children as they grow older.

31. Since 2009, DD Co.'s market share for the Patented Product in Canada has increased to approximately 55% in 2013.

32. From 2013 to 2014, sales of the Patented Product increased 222.5% in the United States.

33. In or about October 2011, drugstore.com began purchasing the Patented Product from DD Co. and began offering the Patented Product for sale throughout the United States, including in the state of Minnesota.

34. Sales of the Patented Product to drugstore.com increased from approximately US$6,600 in 2011 to more than US$1.4 million in 2014. Through August 2015, sales of the Patented Product were greater than for the same period in 2014.

35. In March 2014, Walgreens began purchasing the Patented Product from DD Co. and began offering the Patented Product for sale in its stores, including stores located in the state of Minnesota, and on its website, www.walgreens.com.

36. Sales of the Patented Product to Walgreens through August 2015 were greater than total sales of the Patented Product to Walgreens for all of calendar year 2014.

37. In 2014, DD Co. invested over US$675,000 in marketing and advertising the Patented Product in the United States.

38. Year-to-date in 2015, DD Co. has invested nearly US$2 million in marketing and advertising the Patented Product in the United States.

39. On or about September 18, 2013, a meeting was held between representatives of Walgreens and DD Co. At this meeting, DD Co. made a presentation which referenced the fact that the issued and pending patents, including in the United States, that covered or would cover the Patented Product.

40. On or about April 1, 2015, a meeting was held between representatives of Walgreens and DD Co. At this meeting, DD Co. made a presentation which referenced the issued and pending patents, including in the United States, that covered or would cover the Patented Product.

41.     At the meeting on or about April 1, 2015, Walgreens asked if DD Co. would consider private label (*i.e.*, under the Walgreens brand) sales of the Patented Product. DD Co. responded that private label sales of the Patented Product were not part of its business model and that its products were branded with issued and pending patents.

42.     Despite successful and growing sales of the Patent Product by Walgreens and drugstore.com, on or about April 26, 2015, Walgreens dropped the Patented Product from approximately 135 Walgreens store locations. The alleged reason given by Walgreens was lack of shelving space, not lack of performance.

43.     Upon information and belief, Walgreens approached an unknown third-party manufacturer, believed to be located in Canada, in March or April 2015 about producing an identical infringing copy of the Patented Product. Upon information and belief, the unknown third-party manufacturer began producing and shipping into the United States an identical infringing copy of the Patented Product in or about May 2015.

44.     On or about July 8, 2015, DD Co. provided additional notice of the '958 Patent to Walgreens' buyer representative. The Walgreens' representative acknowledged receipt of the notice and responded, "Great news, congratulations!"

45.     On or about July 8, 2015, DD Co. provided additional notice of the '958 Patent to drugstore.com's representative. The drugstore.com representative acknowledged receipt of the notice and responded, "That's awesome. Very good news!"

46.     On or about August 11, 2015, Walgreens and drugstore.com commenced offering for sale and selling an identical infringing copy product to the Patented Product. Walgreens and drugstore.com offer this identical infringing copy product for sale under the private label name "Baby Vitamin D$_3$ Drops" ("the Infringing Product").

47. True and correct copies of photographs of the packaging for the Infringing Product and the Infringing Product bottle are attached as Exhibit C.

48. Walgreens and drugstore.com are targeting and marketing the Infringing Product directly against the Patented Product.

49. By targeting and marketing the Infringing Product directly against the Patented Product, Walgreens and drugstore.com are seeking to capitalize on the significant marketing campaign of DD Co. and to take customers and sales from the Plaintiffs, including sales of vitamins to older children and adults.

50. The Infringing Product box states on the front, with a blue-shaded background similar to the blue-shaded background on the Patented Product, "Compare vs. Baby Ddrops®‡‡". The "‡‡" references a note which states: "Baby Ddrops® is a registered trademark of The Ddrops Company, Inc."

51. The packaging and bottle label for the Infringing Product states that it is "Made in Canada."

52. The packaging and bottle label for the Infringing Product states that its ingredients are: "Medium Chain Triglycerides, Cholecalciferol."

53. The packaging and bottle label for the Infringing Product states: "Babies need vitamin D for healthy growth & development."

54. The packaging and bottle label for the Infringing Product instructs the purchaser/end-user as follows:

> **SUGGESTED USE:** For infants less than one (1) year old: Turn bottle completely upside down. Place one (1) drop daily onto mother's nipple or on a clean surface such as a washed finger or a pacifier, and allow baby to suck for at least thirty (30) seconds. Or mix one (1) drop daily with milk, juice or other food."

55. The packaging and bottle label for the Infringing Product states: "Serving Size 1 Drop (0.028mL or 0.001 fl. oz.)".

56. The packaging for the Infringing Product states: "Vitamin D is important for healthy growth and development in infancy and childhood especially for normal bone growth and muscle development."

57. The packaging for the Infringing Product states: "The American Academy of Pediatrics recommends that infants who are breast-fed should be supplemented with 400 IU of Vitamin D daily."

58. The Infringing Product provides 400 IU of vitamin D3 per drop.

59. Walgreens states on its website (http://www.walgreens.com/store/c/walgreens-baby-vitamin-d-400-iu-drops/ID=prod6283973-product), the statements and information referenced in paragraphs 50 through 58 above, separately and distinct from the packaging or label of the Infringing Product.

60. drugstore.com states on its website (http://www.drugstore.com/walgreens-baby-vitamin-d-400-iu-drops/qxp558307?catid=183172), the statements and information referenced in paragraphs 50 through 58 above, separately and distinct from the packaging or label of the Infringing Product.

61. The Infringing Product bottle is a larger size than the Patented Product bottle. The Infringing Product contains approximately a one-year supply, while the Patented Product is sold in either 60-day or 90-day supply sizes.

62. Walgreens and drugstore.com are selling the Infringing Product at a lower price, including lower per serving price, than the price for the Patented Product.

63. On or about August 21, 2015, at the North American Chain Drug Store tradeshow in Denver, Colorado, DD Co. prominently displayed notice of the '958 Patent at its booth.

64. Representatives of Walgreens and drugstore.com were present at the North American Chain Drug Store tradeshow, and upon information and belief saw DD Co.'s notice regarding the '958 Patent.

65. Walgreens representatives avoided contact with DD Co. representatives at the tradeshow, and missed more than one pre-scheduled meeting without explanation or comment.

66. A meeting was held on August 22, 2015, at the tradeshow with a representative of drugstore.com. During this meeting a representative of DD Co. discussed the issuance of the '958 Patent and its importance to DD Co.'s business.

67. A subsequent meeting at the tradeshow with the representative of drugstore.com was scheduled for August 23, 2015. However, the representative of drugstore.com did not appear at the meeting for no expressed reason.

68. On October 5, 2015, DD Co. launched a nation-wide advertising and marketing campaign for the Patented Product in the United States. This campaign features television advertising on the nationally syndicated American Broadcasting Company's ("ABC's") "Good Morning America," which ran for the first time on October 5. The cost of this nation-wide advertising and marketing campaign in the United States is in excess of US$1 million.

69. On October 6, 2015, Walgreens advised DD Co. that it was returning 581 units of the Patented Product. The reason stated was that it was a discontinued item.

70. Walgreens has offered for sale and sold the Infringing Product in the state of Minnesota.

71. drugstore.com has offered for sale and sold the Infringing Product in the state of Minnesota.

## CAUSES OF ACTION

<u>Count I – Infringement of the '958 Patent (against Walgreens)</u>

72. The Plaintiffs restate and reallege paragraphs 1 through 71 and incorporate them herein by reference.

73. End-users of the Infringing Product directly infringe one or more claims of the '958 Patent, including but not limited to claim 1, in violation of 35 U.S.C. § 271(a), by following and performing the steps on the label and bottle of the Infringing Product.

74. Both prior to, and after, commencing sales of the Infringing Product, Walgreens knew of the '958 Patent and its pendency before the USPTO.

75. Both prior to, and after, commencing sales of the Infringing Product, Walgreens had the specific intent to induce and to cause end-users to directly infringe the '958 Patent.

76. Both prior to, and after, commencing sales of the Infringing Product, Walgreens, with knowledge of the '958 Patent, actively induced and encouraged end-users to directly infringe the '958 Patent, including, but not necessarily limited to, through its instructions for use on the Infringing Product.

77. Walgreens is liable for inducing infringement of the '958 Patent in violation of 35 U.S.C. § 271(b).

78. Walgreens' inducing infringement of the '958 Patent has been willful, reckless, and in conscious disregard of the Plaintiff's lawful patent rights in the '958 Patent. Walgreens acted despite an objectively high likelihood that its actions constituted infringement of a valid

patent and this objectively defined risk was either known or so obvious that it should have been known to Walgreens.

79. As a result of Walgreens' inducing infringement of the '958 Patent, the Plaintiffs have suffered loss and damage, including lost profits, lost royalties, and other damages, the precise amounts to be determined at trial.

80. As a result of Walgreens' induced infringement of the '958 Patent, the Plaintiffs have suffered, and will continue to suffer, irreparable harm, especially as a result of Walgreens benefitting from, and "free-riding" on, the nation-wide advertising and marketing campaign in the United States recently commenced by DD Co.

81. Because of the irreparable and continuing harm caused by Walgreen's inducing infringement, the Plaintiffs are entitled to preliminary and permanent injunctive relief enjoining Walgreens, its officers, directors, attorneys, and all other persons acting in concert with them from importing, offering for sale, or selling the Infringing Product or colorable imitations thereof in the United States for the term of the '958 Patent.

Count II – Infringement of the '958 Patent (against drugstore.com)

82. The Plaintiffs restate and reallege paragraphs 1 through 81 and incorporate them herein by reference.

83. End-users of the Infringing Product directly infringe one or more claims of the '958 Patent, including but not limited to claim 1, in violation of 35 U.S.C. § 271(a) by following and performing the steps on the label and bottle of the Infringing Product and the instructions separately stated on the drugstore.com website referenced above.

84. Both prior to, and after, commencing sales of the Infringing Product, drugstore.com knew of the '958 Patent and its pendency before the USPTO.

85. Both prior to, and after, commencing sales of the Infringing Product, drugstore.com had the specific intent to induce and to cause end-users to directly infringe the '958 Patent.

86. Both prior to, and after, commencing sales of the Infringing Product, drugstore.com, with knowledge of the '958 Patent, actively induced and encouraged end-users to directly infringe the '958 Patent, including, but not necessarily limited to, through its instructions for use of the Infringing Product as posted on its website, as well as the instructions on the packaging and bottle of the Infringing Product.

87. drugstore.com is liable for inducing infringement of the '958 Patent in violation of 35 U.S.C. § 271(b).

88. drugstore.com's inducing infringement of the '958 Patent has been willful, reckless, and in conscious disregard of the Plaintiff's lawful patent rights in the '958 Patent. drugstore.com acted despite an objectively high likelihood that its actions constituted infringement of a valid patent and this objectively defined risk was either known or so obvious that it should have been known to drugstore.com.

89. As a result of drugstore.com's inducing infringement of the '958 Patent, the Plaintiffs have suffered loss and damage, including lost profits, lost royalties, and other damages, the precise amounts to be determined at trial.

90. As a result of drugstore.com's induced infringement of the '958 Patent, the Plaintiffs have suffered, and will continue to suffer, irreparable harm, especially as a result of drugstore.com benefitting from, and "free-riding" on, the nation-wide advertising and marketing campaign in the United States recently commenced by DD Co.

91. Because of the irreparable and continuing harm caused by drugstore.com's inducing infringement, the Plaintiffs are entitled to preliminary and permanent injunctive relief enjoining drugstore.com, its officers, directors, attorneys, and all other persons acting in concert with them from importing, offering for sale, or selling the Infringing Product or colorable imitations thereof in the United States for the term of the '958 Patent.

## DEMAND FOR JURY TRIAL

The Plaintiffs demand a trial by jury on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs DDrops Company, Reinhold Vieth, and Elaine Vieth pray for entry of judgment, jointly and severally, against Defendants Walgreen Co. and drugstore.com, Inc. as follows:

1. For an award of damages adequate to compensate for the infringement of the '958 Patent, but in no event less than a reasonable royalty, against the Defendants.

2. For preliminary and permanent injunctive relief, enjoining the Defendants, and each of them, from making, using, selling, offering for sale, or importing into the United States products which infringe any claim of the '958 Patent and any colorable imitations thereof.

3. For increased damages pursuant to 35 U.S.C. § 284 on all sums awarded.

4. For an award of attorneys' fees pursuant to 38 U.S.C. § 285 and all costs incurred in connection with this action.

5. For pre- and post-judgment interest on all sums awarded as allowed by law.

6. For such other and further relief as the Court may deem just and equitable.

Dated: October 30, 2015.   *s/*Alan M. Anderson
  Alan M. Anderson (149500)
  L. Reagan Florence (396468)

Matthew Palen (317895)
    *Of counsel*
Aaron C. Nyquist (392394)
    *Of counsel*
Alan Anderson Law Firm LLC
Crescent Ridge Corporate Center
11100 Wayzata Blvd., Suite 545
Minneapolis, MN 55305
Tel: (612) 756-7000
Fax: (612) 756-7050
Email: aanderson@anderson-lawfirm.com
       rflorence@anderson-lawfirm.com
       mpalen@comcast.net
       anyquist@anderson-lawfirm.com

*Attorneys for Plaintiffs*
*DDrops Company,*
*Reinhold Vieth, and Elaine Vieth*